· JACOB O. CHANCE

v.

COUNTY OF MARION.

1. FEES *of county officers—special laws relating to, abrogated by the constitution.* The last clause of section 11 article 10 of the constitution of 1870, abrogated all special laws relating to fees of township and county officers, in force at the time of the adoption of that instrument, and required that such officers should receive only such fees as were provided by laws of general operation throughout the State, until the meeting of the first general assembly thereafter.

2. It seems that the effect of this clause was not only to repeal all such special laws in particular counties, but also to revive in such counties the general fee bill laws of the State until the legislature should revise these laws when they came to classify the counties according to population.

3. The twelfth section of the same article of the constitution, which provides that all laws fixing the fees of State, county and township officers, shall terminate with the terms respectively of those who might be in office at the meeting of the first general assembly after the adoption of the constitution, and gives the legislature the right to reduce the fees of existing officers, is not in conflict with the last clause of section 10 of same article. Section 10 repealed all special laws, while section 12 was intended to do away with the general laws on the subject of fees for such officers at the end of their terms of office.

4. CONSTITUTIONAL LAW — *construction — argument ab inconvenienti.* Where a constitutional provision is plain and unambiguous, the fact that it may work great inconvenience or hardship to a particular class of officers or persons, furnishes no ground for the courts, by construction, to pervert its evident intention.

5. SAME—*repealing statutes.* A constitution being the organic law of the State, is supreme, and controls all other laws which are in force when it is adopted, or which are enacted after it comes into existence. Having the power to prevent particular legislation, it must have the same power to repeal existing legislation, and does repeal all prior statutes in conflict with its provisions.

6. SAME—*no subsequent legislation necessary to repeal laws conflicting with.* As the fundamental law of the State is equally efficacious to control every department of government and the acts of every member of the community, it follows that, when it prohibits the performance of an act by

communities, individuals or officers, it must be obeyed, and courts will enforce the prohibition without awaiting the action of either of the other departments.

7.  SAME—*rule of interpretation.*  Where a constitutional provision will bear two constructions, one of which is consistent with, and the other inconsistent with, an intention expressed clearly in a previous section, the former must be adopted, that both provisions may stand and have effect.

APPEAL from the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

Mr. T. E. MERRITT, and Mr. HENRY C. GOODNOW, for the appellant.

Mr. M. SCHAEFFER, Mr. TILMAN RASER, and Mr. D. C. JONES, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears, from the record in this case, that appellant was clerk of the county court of Marion county at the time the services were rendered; that the fees, for the recovery of which this suit was brought, were charged for services rendered as clerk after the adoption of the present constitution. The fees are charged and claimed under the act of February, 1865, (Sess. Laws, p. 65,) entitled "An act to fix the fees of certain officers in certain counties therein named," which act was continued in force by the act of February 26, 1867. (Sess. Laws, p. 111.)   The act is special in its scope, and does not, in its spirit, apply to all like officers of the State, but is, in terms, restricted to the counties therein named.   See *The People* v. *Miner*, 47 Ill. 33.

It is contended that the 11th section of article 10 of the present constitution has abrogated this act, and that the fees charged under it are not warranted by any law.   That section is this: "The fees of township officers and each class of county officers, shall be uniform in the class of counties to which they respectively belong.   The compensation herein provided for shall apply to officers hereafter elected, but all fees established by special laws shall cease at the adoption of

this constitution, and such officers shall receive only such fees as are provided by general law."

The first and second clauses of this section seem to apply to subsequent legislation in regard to fees, rendered necessary from the requirements of the constitution. They refer to classes of officers and counties which are required by that instrument; and it declares that the compensation therein provided for shall only apply to officers who should be subsequently elected. But the last clause manifestly refers to special laws then in force, giving fees to such officers, and it emphatically declares that such fees shall cease upon the adoption of the constitution. This language is clear and unambiguous. It neither requires nor admits of construction. No ingenuity can torture this language into any meaning, but the fees allowed by special laws then in force should cease when that instrument should be adopted by the people.

Such fees are expressly named, and hence none other can be embraced. To hold that, under this provision, special laws giving fees could be continued, would be to disregard the plainest expression that could be made by the use of language. It would violate, without the least pretense of an ambiguity or uncertainty of meaning, one of the plainest provisions of the fundamental law of the State. But it is urged that great inconvenience must result if this provision is enforced. If such were the case, it would afford no reason or the slightest pretense of an excuse for overriding the provisions of the constitution. Even if the officers were left without compensation until the legislature should provide by law for such fees, that would be a great hardship and manifestly unjust, but that would not abrogate the constitution. That instrument is designed, from the very nature of things, to be permanent and unyielding in its provisions. Mere necessity or inconvenience to a class of persons does not, nor can it change, its requirements. All departments of government, all officers and all classes of persons, as well as each individual

must conform their acts to its provisions so long as they remain in force, and they can only be altered, changed or abrogated by the power that adopted them.

But the framers of that section have not imposed an unjust provision upon such officers, as they have, while repealing all special laws giving fees in terms, revived the general fee bill laws of the State. In this they made ample provision for compensation to such officers until the general assembly should revise these laws when they came to classify the counties. This section unmistakably declares that such officers shall receive fees under the general laws then in force. This is so clear and manifest that it requires no reasoning to make it obvious to the comprehension of every mind.

Nor will it be seriously contended that the constitution can not, by its own inherent power, repeal statutes which conflict with its provisions. Such has always been conceded to it, as one of the effects of the adoption of such instruments. Being the organic law, it is supreme, and controls all other laws which are in force when it is adopted, or which are enacted after it comes into existence. If it has the power to prevent particular legislation, it must be invested with the same power to repeal existing legislation. And it is equally efficacious to control the acts of the individual members of the community. When it prohibits the performance of an act by communities, individuals or officers, it must be obeyed, and the courts must enforce the prohibition without awaiting the action of either of the other departments of the government. This rule was announced in the case of *Hills* v. *The City of Chicago*, 60 Ill. 86, and *Supervisors, etc.* v. *Jones*, 63 id. 531, and the doctrine is sustained by numerous decisions of other courts. But if it were not, it is so obviously correct that we should have no hesitation in its adoption.

Nor do we see, as is contended, that the 12th section of the same article conflicts with the eleventh section. That section provides that all laws fixing the fees of State, county and township officers, shall terminate with the terms respectively

of those who may be in office at the meeting of the first general assembly after the adoption of the constitution. And it requires the general assembly, by general law, uniform in its operation, to provide for and regulate the fees of such officers and their successors so as to reduce the same to a reasonable compensation for services actually rendered. And the last clause reserves the right to the general assembly to reduce the fees of existing officers.

We have seen that, by the adoption of the eleventh section, all special laws allowing fees to such officers were suspended in their operation, and fees thereunder were prohibited. What, then, was the purpose and effect of the twelfth section? The first object declared is, that the fee bill laws then in existence should not remain in force beyond the term for which the officers were elected. The eleventh section having repealed the special laws, it was intended that the twelfth should abrogate the general law on the subject of fees for such officers at the end of their terms ; that before that time should elapse, a new general law, uniform in its operation as to classes of counties and officers, should be adopted, giving a reasonable compensation for services actually performed.

The framers of these two sections have manifested no intention to continue the special laws in force, but have said they should cease to operate when the constitution should be adopted. Having made this explicit declaration, the canons of interpretation would not permit us to hold that this express declaration was intended to be abrogated and rendered ineffective by the use of language which may bear two constructions, one of which would produce that effect, and the other sustain the provisions. The deliberate will of the body framing the organic law, thus expressed, can not be thwarted by such a mode of interpretation. If the language of the latter section will bear two constructions, one consistent and the other inconsistent with the previously expressed intention, the former construction must be adopted, that both may stand. It, then, must be held that the laws referred to in the first clause

of the twelfth section are the general laws, not including spe-
cial laws on that subject.

The language of that clause is only permissive as to the con-
tinuance of such laws until the terms of office shall terminate.
It has not declared that they shall remain in force until that
time, but it is peremptory that they shall then terminate.
And it expressly reserves the right to reduce the fees of such
officers. This provision of the twelfth section only designed
to continue the general fee bill laws in force until the general
assembly should revise the subject and adopt a new tariff of
fees, but not to a period longer than the expiration of the
term for which such officers were elected. This is manifestly
the meaning of these two sections. No other view which we
have been able to take of them is harmonious or consistent,
and hence we have been impelled to the conclusions an-
nounced.

After the adoption of the constitution, such officers were
only entitled to such fees as the general laws of the State
gave them for services rendered. For compensation, they
can only look to the general and not to special laws.

We perceive no error in this record, and the judgment is
affirmed.

*Judgment affirmed.*